FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 99 MAR -1 AM 10:39
JASPER DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MARY R. KELLY, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 97-B-2114-J |
| EMERSON ELECTRIC COMPANY, | } | |
| Defendant. | } | |

ENTERED
MAR 0 1 1999

**MEMORANDUM OPINION**

Currently before the court is the motion of defendant Emerson Electric Company ("Emerson" or "defendant") for summary judgment. This dispute arises out of plaintiff Mary R. Kelly's ("Kelly" or "plaintiff") employment with defendant. Kelly alleges that defendant discharged her in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, et seq. She also claims that she was discharged in retaliation for having filed a workers' compensation claim in violation of Alabama Code § 25-5-11.1. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

**I. FACTUAL SUMMARY**

On or about October 19, 1992, defendant hired plaintiff to work as a production operator on the second shift at the Weigand Appliance Division in Vernon, Alabama. (Pl.'s Dep. at 45-46). At the time plaintiff was hired, she received a copy of Emerson's Employee Handbook and acknowledged in writing that she was an at-will employee. (Def. Ex. 3 to Pl.'s Dep.). The

defendant offers a variety of leave benefits to its employees, including the option of up to twelve weeks of unpaid leave pursuant to the FMLA. (Def. Ex. 5 to Pl.'s Dep.). In addition, defendant provides personal leave for up to four weeks. (*Id.*). Specifically, the handbook provides the following information:

> **Personal Leave**
> "Under special circumstances, a personal leave of absence without pay (not to exceed four (4) calendar weeks) may be granted upon request of an employee, provided operations permit, and if the reason for such leave of absence is considered by the company to be reasonable. Granting of such leaves must be approved by the Personnel Department. For benefits information while on Personal Leave, contact the Personnel Department.
>
> **Family Leave**
> Weingand recognizes that employees have family commitments. Our Family Leave Policy shows our support for our employees who become a parent through birth, adoption, foster care or legal guardianships, and for serious health conditions of certain family members (spouse; minor children through birth, adoption, legal guardianship or foster care; step-children; and an employee's parents). Children over the age of 18 are included if they are incapable of self-care because of mental or physical disability.
> Family leaves may be granted for twelve (12) weeks within a rolling twelve (12) month period, provided the employee has been employed for twelve (12) months, and has worked a minimum of 1250 hours during the preceding twelve (12) months. All paid time off, vacations, and/or medical leave must be taken at the beginning of the leave period and will be counted as part of the twelve (12) weeks.
> In case of spouses employed by Weigand, the maximum combined period of leave shall not exceed twelve (12) weeks.
> For more information, contact your Personnel Department.

(*Id.*). Plaintiff testified that she was aware of these leave policies. (Pl.'s Dep. at 50-51).

The Employee Handbook also provides that any employee who is absent and fails to report personally for three consecutive days is considered to have voluntarily quit. (Def. Ex. 4 to Pl.'s Dep.). Specifically, the Handbook provides:

**FAILURE TO REPORT WITHIN THREE DAYS**
Employees who are absent and fail to report the absence personally for three consecutive work days will be terminated and considered to have voluntarily quit.

(*Id.*). Plaintiff testified that she was aware of this company policy. (Pl.'s Dep. at 49-50).

On February 19, 1996, plaintiff injured herself on the job. (Pl.'s Dep. at 52). The following Monday, plaintiff reported her injury to Steve Lawson [defendant's personnel manager] who sent plaintiff to a company-approved doctor. (*Id.* at 58). Plaintiff was taken off of work for two days and then returned to work. (*Id.*).

Approximately two weeks later, plaintiff reported to Mr. Lawson that her shoulder was not improving. (Pl.'s Dep. at 61-62). Mr. Lawson sent plaintiff to an orthopaedic specialist, who diagnosed plaintiff with carpal tunnel [syndrome]. (*Id.* at 62). After a course of therapy, plaintiff was placed on light duty with restrictions on lifting. (*Id* at 63-64). Plaintiff was subsequently assigned to a variety of light-duty jobs. (*Id.* at 65). Plaintiff continued to have difficulties with her shoulder and in August 1996 was placed on medical leave for several weeks. (Pl.'s Dep. at 71). Plaintiff returned to work in early October. (*Id.* at 72-73).

Approximately one week after her return, plaintiff's father entered the hospital for hip replacement surgery. (Pl.'s Dep. at 75). Plaintiff approached Mr. Lawson and advised him that she was going to take a vacation on Monday, October 14th, and Tuesday, October 15th. (*Id.* at 81-83). On the morning of October 16th, plaintiff called the plant and informed Ricky Jones that her father had complications following his surgery, that she expected to be away from work for at least the remainder of the week, and that she would speak with Mr. Lawson the next Monday. (*Id.* at 91-92, 95). Plaintiff testified Mr. Jones approved her absences for that period. (*Id.* at 91).

3

Jones testified that he did not recall plaintiff making any representations to him about when her father's condition was expected to improve, or when she would be able to return to work. (Jones Dep. at 35-36).

On Friday, October 18th, plaintiff called the plant and spoke with Danny Gilliland. (*Id.* at 95). Mr. Gilliland asked plaintiff if she intended to take personal leave or medical leave for the dates she was out of work. Plaintiff replied that she was unsure, but that she would consult the employee handbook and would let him know by the following Monday. (*Id.*). Gilliland testified that he had no expectation of when plaintiff would be back to work. (Gilliland Dep. at 23). On Monday, October 21st, plaintiff called the plant and spoke with Mr. Lawson advising him of her father's complications. (*Id.* at 96-97). He asked plaintiff if she desired to take personal leave or family leave for her days of absence. (*Id.* at 97, 99-100). Plaintiff again replied that she would consult the employee handbook and stated that she would let him know by Wednesday the 23rd. (*Id.* at 100). On October 23rd, plaintiff informed Lawson that she had decided to take personal leave. (Pl.'s Dep. at 101-102). She thought it was best because it was designated to last for four weeks. (*Id.*). Plaintiff testified that although the maximum time allowable for FMLA (family) leave was twelve weeks, she understood that if she designated her leave as FMLA leave, she was not obligated to take the entire twelve weeks. (*Id.* at 121-122).

Defendant asserts that the plaintiff was told to come back to work on October 28th, or to call in by that date if she needed more time. In support of this position, defendant relies on a note written by Steve Lawson in plaintiff's personnel file dated November 7, 1996: "I told Mary to either come back to work Monday 10/28/96, or of she needed more time to be with her father to call me and we could extend the personnal [sic] leave another week. Mary agreed to this

4

proposal." (Ex. 2 to Dep. of Christopher Dickey). Plaintiff testified that she did not remember Lawson telling her to call in at that time. (Pl.'s Dep. at 103,115-117).

On Wednesday, November 6, 1996, plaintiff called Lawson at the Plant and advised him that she was ready to return to work. Lawson reminded her that she was supposed to have called him on the Monday before. (Pl.'s Dep. at 112-113; Ex. 2 to Chris Dickey Dep.). Plaintiff replied that she was not required to call because she was on personal leave. (Pl.'s Dep. at 113). Lawson reminded plaintiff of the company's three-day call in policy[1] and asked plaintiff to come to the plant the following day. (*Id.* at 114; Ex. 2 to Chris Dickey Dep.).

The next morning, plaintiff met with Lawson at the Plant, and he again reminded her of the three day call in policy. (Pl.'s Dep. at 114). Plaintiff responded that she was aware of the company policy regarding calling in, but that she was under the impression that she was on personal leave. (*Id.* at 114-115). Lawson advised her that he would discuss the issue with Jack Jones and Allen Lee and would let her know of any further action the company would take. (*Id.* at 117-118). The following day, Lawson informed plaintiff that she was being discharged. (*Id.* at 118-119).

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues

---

[1] As noted, the Employee Handbook provides: "[e]mployees who are absent and fail to report the absence personally for three consecutive work days will be terminated and considered to have voluntarily quit." (Ex. 4 to Pl.'s Dep.)

5

exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Family and Medical Leave Act Claim

To establish a prima facie case for a violation of the FMLA, plaintiff must establish that: (1) she availed herself to a right protected by the FMLA; (2) she thereafter suffered an adverse employment decision; and (3) there was a causal connection between the two events. *Dollar v. Shoney's*, 981 F.Supp. 1417, 1419-1420 (N.D.Ala 1997)(quoting *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir. 1997)). If plaintiff establishes a prima facie case, thereby giving rise to a presumption of unlawful, disparate treatment, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption of intentional discrimination by

6

articulating legitimate, nondiscriminatory reasons for contested employment action. *Dollar*, 981 F.Supp at 1420(quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons are mere pretext for unlawful, discriminatory motives. (*Id.*)

The first step of the court's prima facie case inquiry requires plaintiff to prove that she availed herself to a right protected by the FMLA. Defendant argues that plaintiff cannot establish her prima facie case of FMLA discrimination because she was not on FMLA leave and therefore was not protected under the Act. Defendant's assertion is supported by the fact that plaintiff testified that she knew she had the right to take FMLA leave but that she elected to take personal leave instead. (Pl.'s Dep. at 107-108). Furthermore, she testified that no one ever told her that she could not take FMLA leave. (*Id.*). "Having elected to take personal leave, plaintiff may not now claim that she was taking FMLA leave in order to state a claim for damages against her former employer." *Walthall v. Fulton County School District*, 18 F.Supp.2d. 1378, 1383 (N.D. Ga. 1998).

When defendant designated plaintiff's leave as paid personal leave, plaintiff did nothing to put them on notice that she sought FMLA (or family) leave instead. *Id.* Plaintiff testified that although the maximum time allowable for FMLA leave was twelve weeks, she understood that if she designated her leave as FMLA (or family) leave, she was not obligated to take the entire twelve weeks. Plaintiff cannot demonstrate that she availed herself to a right under the FMLA. Because plaintiff is unable to establish a prima facie case, summary judgment in favor of the defendant is due to be granted.

Assuming however, that plaintiff had established a prima facie case, defendant must articulate a legitimate, nondiscriminatory reason for terminating plaintiff. Defendant states that it acted under a good-faith belief that plaintiff was supposed to call in on October 28th, and when she failed to contact the company until November 6th, plaintiff was terminated pursuant to the policy in the Employee Handbook regarding employees who are absent for more than three days without calling in. An employer's good faith belief that an employee was absent for more than three days without reporting her absences as required constitutes a legitimate, nondiscriminatory reason for termination.[2]

Because defendant has met its burden of articulating a legitimate nondiscriminatory reason for terminating plaintiff, in order to avoid summary judgment plaintiff must put forth sufficient evidence that a reasonable jury could conclude that defendant's stated reasons are mere pretext for an unlawful, discriminatory motive. Plaintiff states in her brief that "[i]f there is pretext in said articulated reason, it lies in the Defendant's position that the Plaintiff was not on FMLA leave. . ." (Pl.'s Br. at 13). Plaintiff has presented no evidence to suggest that plaintiff was on anything but personal leave. Therefore, since no credible evidence suggests that defendant's stated reason for discharging plaintiff was pretextual, summary judgment is due the defendant on the FMLA claim asserted by plaintiff.

---

[2]Plaintiff argues that defendant's good faith belief is irrelevant, except as to damages. Plaintiff relies on *Kaylor v. Fannin Regional Hosp., Inc.,* 946 F. Supp. 988 (N.D. Ga. 1996), to support her argument that strict liability should apply if defendant violated the Act. As the defendant correctly points out, the court in *Kaylor* explains that the *McDonnell Douglas* shifting burdens of proof analysis should be used when addressing a claim under §2615(a)(2) of the Act. (*Id.* at 999). Thus, in this case, plaintiff's strict liability argument is inapplicable.

**B. Workers' Compensation Claim**

Plaintiff's second allegation is that defendant terminated her in retaliation for filing a workers' compensation claim. Plaintiff claims that her termination was unlawful and constituted a retaliatory discharge in violation of § 25-5-11.1 of the Alabama Code. Defendant claims that it is entitled to judgment as a matter of law because plaintiff has failed to establish all the elements required to state a claim for retaliatory discharge under § 25-5-11.1.

Plaintiff claims that defendant violated Alabama's retaliatory discharge statute when it terminated her employment. Section 25-5-11.1 of the Alabama Code states in relevant part: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter . . . ." Alabama Code § 25-5-11.1(1975).

A plaintiff establishes a *prima facie* case of retaliatory discharge under § 25-5-11.1 by proving:

> that he was 'terminated' because he sought to recover worker's compensation benefits, which would be an impermissible reason.[3] The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination.

---

[3] This court is of the opinion that this is an odd choice of words. If plaintiff *proves* that he was terminated *because* he sought to recover worker's compensation benefits, that would be the end of the case. It seems more appropriate that the first step in a plaintiff's prima facie case would be for the plaintiff to establish that he or she was terminated after having filed a worker's compensation claim. This would raise an inference that the discharge was for an impermissible reason, that is, in retaliation for having filed a worker's compensation claim. The burden would then shift to the defendant to set forth a legitimate, non-retaliatory reason for the discharge.

*Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1539 (N.D. Ala. 1995) quoting *Twilley v. Daubert Coated Products, Inc.*, 536 So.2d 1364, 1369 (Ala. 1988).

Plaintiff states that her termination occurred because her employer was "tired of making accommodations for her due to her on-the-job injury, ensuing doctor's appointments and time off, and her light duty requirement." (Pl.'s Br. in Opp. to Def. M. Summ. J. at 17). Despite this argument, plaintiff has not produced any *evidence* to demonstrate any causal connection between her workers' compensation claim and her discharge.

Alabama case law imposes an additional requirement, beyond the original prima facie case, on a plaintiff attempting to establish a retaliatory discharge claim under § 25-5-11.1. In bringing a retaliation claim under this statute, a plaintiff must prove as part of her prima facie case, that she was "willing and able" to return to her job. *Consolidated Stores, Inc. v. Gargis*, 686 So.2d 268 (Ala. Civ. App. 1996). The *Gargis* opinion states: "[W]e conclude that an essential element of a retaliatory discharge claim is the plaintiff's willingness and ability to return to work." *Id.* at 273.

The Alabama Court of Civil Appeals has clarified this requirement by holding that a plaintiff must prove she is able to perform the functions of her own job and need not be provided with a light duty position or any reasonable accommodation. *See Rice v. Bruno's*, 705 So.2d 486 (Ala. Civ. App.1997) (employer is not required to provide light duty job for employee unable to perform functions of his own position); *Lambert v. Beverly Enterprises, Inc.*, 695 So.2d 44 (Ala. Civ. App. 1997) (employer not required to provide any reasonable accommodation for employees unable to perform the functions of their position).

Plaintiff is unable to establish her prima facie case because the evidence shows that she was not "willing and able" to return to work at the time she was terminated. In support of the

10

argument that plaintiff was not "willing and able" to return to her job, defendant relies on statements made by plaintiff under oath in which she stated that she has not been able to perform her regular job since her injury:

> Q: Has there been any time since you were injured that you could work that job that you were doing before you were injured?
>
> A: No Way.
>
> Q: Up until even today?
>
> A: No. I couldn't do that job.

(Pl.'s Dep. at 150).

     Assuming that plaintiff could establish a prima facie case of retaliatory discharge, the defendant has put forth evidence establishing a legitimate reason for the plaintiff's termination, that being that plaintiff was terminated due to her failure to call or report to the plant for three consecutive days. Plaintiff has not produced any evidence to suggest that defendant's decision to terminate her was pretext for an unlawful termination due to the plaintiff having filed a workers' compensation claim. Furthermore, under Alabama law plaintiff is required to prove that she is "willing and able" to return to her job as an essential element of her case. Plaintiff has also failed to prove she is "willing and able" to return to her former job position. Thus, the court concludes that there is no genuine issue of material fact regarding plaintiff's claim that she was terminated in retaliation for having filed a workers' compensation claim and the defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 1st day of March, 1999.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge